UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-cv-00197-LLK

DALLAS ESTES                                                                                              PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claims for Social Security disability. Plaintiff's memorandum in support of motion for judgment on the pleadings is at Doc. 21-3, and the Commissioner's response in opposition is at Doc. 27. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 16].

Plaintiff makes four arguments. Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, this Opinion will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**Plaintiff's disability claims**

Plaintiff was born on July 14, 1992. [Administrative Record, Doc. 15 at 21].

Beginning on and after July 14, 1996 (her fourth birthday), Plaintiff began filing applications for child's benefits under 42 U.S.C. § 402(d), alleging that she became disabled on July 14, 1996.

20 C.F.R. § 404.350(a)(5) identifies the requirements for entitlement to child's benefits as follows:

(a) General. You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if—

(1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359;

(2) You are dependent on the insured, as defined in §§ 404.360 through 404.365;

1

(3) You apply;

(4) You are unmarried; and

(5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367.

20 C.F.R. § 404.350(a).

On and after July 14, 2010 (her eighteenth birthday), Plaintiff continuing filing child's benefits claims but also began filing applications for Supplemental Security Income (SSI) benefits pursuant to Title XVI of the Social Security Act. "When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application." 20 C.F.R. § 416.335.

Most recently, Plaintiff filed an application for SSI benefits on December 15, 2014 and an application for child's benefits on January 5, 2015. [Doc. 15 at 213].

On September 3, 2019, the ALJ issued the Commissioner's final decision denying Plaintiff's claims, which is presently before the Court on judicial review. *Id.* at 41. The ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 14, 1996, when Plaintiff alleges that she became disabled, through September 3, 2019, when the ALJ issued her decision. *Id.*

**Procedural history**

In May 2013, Plaintiff filed prior claims for child's benefits and SSI benefits, which ALJ Craig R. Petersen denied on December 2, 2014. [Doc. 15 at 128].

In December 2014 and January 2015, Plaintiff filed the present claims for child's benefits and SSI benefits, which ALJ Lisa R. Hall denied on November 27, 2017. *Id.* at 213.

On November 1, 2018, the Appeals Council remanded the matter to Judge Hall for a new decision to reconsider, among other things, the res judicata effect of Judge Petersen's prior findings. *Id.* at 220.

On September 3, 2019, the ALJ issued her remand decision, again denying Plaintiff's claims. *Id.* at 41.

On June 12, 2020, the Appeals Council declined to review the ALJ's decision, thereby converting the ALJ's decision into the Commissioner's final decision, which is presently before the Court. *Id.* at 1.

### The ALJ's decision

In concluding that Plaintiff is not disabled, the ALJ followed the 5-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 14, 1996. [Doc. 15 at 21]. Second, the ALJ found that Plaintiff suffers from the following severe, or vocationally significant, impairments: anxiety disorder and posttraumatic stress disorder (PTSD). *Id.* Third, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.*

As in any case that advances beyond Step 3, the ALJ determined Plaintiff residual functional capacity (RFC). The ALJ found that, physically, Plaintiff can "perform a full range of work at all exertional levels." [Doc. 15 at 23]. However, Plaintiff's anxiety disorder and PTSD limit her to:

> … simple, routine, repetitive work tasks, meaning tasks that apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, with the ability to deal with problems involving several concrete variables in or from standardized situations. She can occasionally interact with co-workers and supervisors. She cannot maintain sustained interaction with the general public. She should not work in a fast paced or production based work environment but can do entry level or goal oriented work.

[Doc. 15 at 23].

Fourth, the ALJ found that Plaintiff has no past relevant work. *Id.* at 39. Fifth, the ALJ found that Plaintiff retains the ability to perform a significant number of unskilled jobs in the national economy such as hand packer, laundry worker, and industrial cleaner. *Id.* at 40.

### The ALJ's decision comports with *Drummond*.

Plaintiff's first argument is that the ALJ's decision does not comport with the requirements of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). [Doc. 21-3 at PageID.1018-23].

3

In *Drummond*, the prior ALJ denied Drummond's claim based on a finding that she had a residual functional capacity (RFC) for only sedentary work. After her age category changed, Drummond filed a new application for benefits, which, assuming her RFC did not improve, would have resulted in an ultimate finding of disability based on direct application of the Appendix 2 rules. However, without citing evidence of medical improvement, the ALJ reevaluated Drummond's RFC, found that she can now perform medium work. *Drummond* held that the ALJ erred in reevaluating Drummond's RFC and ordered payment of benefits. The holding was based on principles of fairness (to protect claimants from arbitrary re-adjudications of RFCs in subsequent claims) and administrative res judicata. "Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.* at 842.

In adopting Acquiescence Ruling (AR) 98-4(6), the Social Security Administration recognized the applicability of *Drummond* in cases arising within the Sixth Circuit. AR 98-4(6) applies *Drummond* to a claimant's "residual functional capacity (RFC) or other finding required at a step in the sequential evaluation process for determining disability." AR 98-4(6), 1998 WL 283902, at *3.

Plaintiff's argument is unpersuasive for five reasons:

First, Plaintiff does not allege or show that Judge's Hall's RFC or "other finding," 1998 WL 283902, at *3, is substantially different – much less substantially less limiting -- than Judge Petersen found.

There are only minor differences between the findings of the ALJs. Judge Petersen found that Plaintiff suffers from severe, or vocationally significant, physical impairments, including neck pain, back pain, shoulder pain, and obesity. [Doc. 15 at 121]. Judge Hall found no severe physical impairment. *Id.* at 21. Yet both ALJs concluded that Plaintiff can "perform work at all exertional levels." *Id.* at 23, 123. Similarly, Judge Petersen found that Plaintiff suffers from severe mental impairments, including depression, bipolar disorder, anxiety disorder, and post-traumatic stress disorder (PTSD). *Id.* at 121.

Judge Hall found only anxiety disorder and PTSD. *Id.* at 21. Yet both mental RFC findings are essentially the same. *Id.* at 23, 123.

Second, Judge Hall reasonable accounted for any differences in the RFC findings. Judge Hall referenced Judge Petersen's and *Drummond* at every step of the evaluation process. [Doc. 15 at 18, 24, 37, 39]. Judge Hall's analysis comported with *Drummond* as more recently interpreted in *Earley v. Comm'r*, 893 F.3d 929 (6th Cir. 2018).

In *Earley*, the Sixth Circuit returned to *Drummond* to address the question of whether res judicata applies only when it favors a claimant (as in *Drummond*) or also when it favors the Commissioner. Res judicata favored the Commissioner in *Earley* because the prior ALJ found that Earley could perform light work and the ALJ believed that he was bound to that finding due to an absence of "new and material evidence documenting a significant change [i.e., medical deterioration] in [Earley's] condition." *Id.* at 930. *Earley* explained that the "correct standard" contemplates a balance between consideration of new evidence since the prior decision and deference to prior findings. On one hand, res judicata does not "prevent the [ALJ] from giving a fresh look to a new application containing new evidence." *Id.* at 931. But, on the other hand, there is nothing wrong with an ALJ's "being mindful of ... the record in prior proceedings," with an eye toward ensuring that "the second filing [does not merely] mimic[] the first one." *Id.* at 933. "What's past likely will be precedent in that [mimicry] setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals." *Id.* at 933-34.

Third, Plaintiff's argument is unprecedented. Plaintiff does not allege or show that her situation is substantially the same as that of Drummond, Earley, or any other plaintiff. Rather, she relies on certain language that the Commissioner (then Secretary) adopted in the wake of Drummond. Specifically, AR 98-4(6) provides that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence

5

> relating to such a finding or **there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.**

AR 98-4(6), 1998 WL 283902, at *3 *(emphasis added)*.  Plaintiff cites and this Opinion finds no case in which the foregoing language formed the basis of a judicial remand.

Fourth, at worst, a harmless error occurred.  As indicated above, Plaintiff argues that a certain "change in the law" excepted her case from the general rule of deference to prior findings.  Plaintiff identifies the specific legal change forming the basis of her argument as follows:

> 29. At the time of the ALJ decision that was issued in the year 2014, 20 C.F.R. § 416.920a(c)(3), required the ALJ to rate the functional limitations resulting from Plaintiffs mental impairment in four areas:  (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensations.
>
> 30. Thereafter, the law changed.  After 2017, 20 C.F.R. § 416.920a(c)(3), required the ALJ to rate the functional limitations resulting from Plaintiffs mental impairment in the following four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or pace; and (4) adapting or managing oneself. Thus, for the ALJ decision dated September 3, 2019, which is the subject of this federal level appeal, this newer law applies.

[Doc. 21-3 at PageID.1016].

The newer "regulations provide a 'special technique' for evaluating the severity of a mental impairment at steps two and three." *Rabbers v. Comm'r*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520a(a)).  In the Sixth Circuit, an ALJ's error of not properly applying the special technique is deemed harmless if a proper application would not likely have changed the result at steps two and three. *Id.* at 658.  Plaintiff does not allege or show that the result would have been different if Judge Petersen and/or Judge Hall had applied the special technique differently.

Fifth, Plaintiff's reliance on *Richards v. Comm'r*, 370 F. App'x 727 (7th Cir. 2010) is unpersuasive. [Doc. 21-3 at PageID.1019-23].  *Richards* acknowledged the Sixth Circuit's harmless error rule. Id. at 730 (citing *Rabbers*).  *Richards*, however, declined to find a harmless error due to "unusual" facts that prevented the Commissioner's program psychologist from opining regarding Richard's mental limitations:

6

> An ALJ's failure to explicitly use the special technique may be harmless error … *see also Rabbers v. Comm'r SSA*, 582 F.3d 647, 654–57 (6th Cir.2009), but here, however, the ALJ's misstep is compounded by other errors in her analysis, and the combined effect of these errors requires a remand. Most significantly, we are troubled that the ALJ rated Richards's mental functional limitations without the benefit of any medical professional's assessment of her mental RFC. Typically, when an applicant claims a mental impairment, the agency's medical or psychological consultant will complete a PRTF [psychiatric review technique form] and assess the severity of the impairment before the case reaches an ALJ. 20 C.F.R. § 404.1520a(e)(1)…. But Richards's case is unusual because her initial application claimed only an eye impairment, and thus the state-agency physicians who reviewed her file evaluated only the effect of her visual limitations on her ability to work. Richards's therapist, however, opined that she "has symptoms of chronic depression and anxiety which interfere with her ability to pursue or maintain employment."

*Richards*, 370 F. App'x at 730-31. *Richards* is distinguishable because, in this case, the ALJ gave "great weight" to the findings of the program psychologists. [Doc. 15 at 38].

### The ALJ's not mentioning certain GAF scores was not reversible error.

Plaintiff's second argument is that the ALJ erred in not considering certain global assessment of functioning (GAF) scores, which appear in her mental health treatment notes. [Doc. 21-3 at PageID.1023-31]. Specifically, she argues that the fact that the ALJ's decision mentioned her GAF of 72 (indicating transient symptoms) on December 9, 2014 [Doc. 15 at 26 referencing 509] required the ALJ also to consider her GAF of 48 (serious symptoms) on January 27, 2015 [738] and her GAF of 53 (moderate symptoms) on September 8, 2015 [784].

Clinicians use the GAF scale, devised by the American Psychiatric Association and ranging from zero to one hundred, to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000). A GAF of 71-80 indicates that "if symptoms are present, they are transient and expectable reactions to psycho-social stressors;" a GAF of 61-70 indicates that the individual has "some mild symptoms;" a GAF of 51-60 indicates that the individual has "moderate symptoms;" and a GAF of 41-50 indicates that the individual has "serious symptoms." *Id.* However, the DSM-5 abandoned the use of GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores. DSM-V 16 (5th ed. 2013).

Plaintiff acknowledges that GAF scores are "subjective opinions, representing … a snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work" and further acknowledges that there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." [Doc. 21-3 at PageID.1025 quoting *Jordan v. Comm'r*, No. 10-11833, 2011 WL 891198, at *5 (E.D. Mich. Jan. 14, 2011) and *Kornecky v. Comm'r*, 167 F. App'x 496, 511 (6th Cir. 2006)]. Plaintiff relies on the principle that, "[a]lthough a GAF score is not essential to the RFC's accuracy, it, nevertheless, may be of considerable help to the ALJ in formulating the RFC." *Id.* quoting *Miller v. Comm'r*, 811 F.3d 825, 836 (6th Cir. 2016). Thus, the Circuit "take[s] a case-by-case approach to the value of GAF scores." *Id.*

Plaintiff's argument is unpersuasive for three reasons.

First, while Plaintiff had a GAF of 48, indicating serious symptoms, on January 27, 2015, by September 8, 2015, she had a GAF of 53, indicating moderate symptoms. [Doc. 15 at 738, 784]. To be disabling, symptoms must have "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A).

Second, there is no evidence that the ALJ did not consider Plaintiff's GAF scores of 48 and 53. The ALJ's decision reflects consideration of the medical records that include these scores. [Doc. 50 at 26 referencing 732-41, 28 referencing 777-806]. "[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r*, 167 F. App'x 496, 508 (6th Cir. 2006).

Third, Plaintiff cites and this Opinion finds no case in which a "case-by-case approach to the value of GAF scores," *Miller*, 811 F.3d at 836, required a reversal of an ALJ's decision. Nor is it apparent why the facts of the present case provide a good opportunity to establish new precedent.

**The ALJ's not mentioning Plaintiff's migraine headaches was not reversible error.**

Plaintiff's third argument is that the ALJ erred in not considering her migraine headaches. [Doc. 21-3 at PageID.1031-32]. Specifically, she argues that the ALJ's decision is deficient for not mentioning her migraines notwithstanding numerous references to them in her medical records. *Id.* at PageID.1015-16 referencing Doc. 50, at 509, 700, 735, 744, 747-48, 754, 767, 770, 772-74, 859, 862, 864, 897.

The argument is unpersuasive for three reasons.

First, the above pages are mostly medical records that list migraines as part of Plaintiff's general medical history. They do not opine any work-related restrictions due to migraines. "The mere diagnosis of [an impairment] ... says nothing about the severity of the condition." *Lee v. Comm'r*, 529 F. App'x 706, 713 (6th Cir. 2013). Additionally, to the extent the above pages "merely [uncritically] regurgitate" Plaintiff's "self-described symptoms," they do not constitute "medical opinions." *Francis v. Comm'r*, 414 Fed. App'x 802, 804 (6th Cir. 2011).

Second, the foregoing pages do not reflect migraine symptoms that "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A).

Third, vocational experts (VEs) routinely testify that the limit of tolerance of most employers due to symptoms of migraines or any other impairment is missing two days per month and/or being off task ten percent of the workday. *See e.g. Masters v. Comm'r*, 707 F. App'x 374, 375 (6th Cir. 2017), *Lindsay v. Comm'r*, No. 3:20-CV-407, 2022 WL 621399, at *4 (S.D. Ohio Mar. 3, 2022), *Marinan v. Comm'r*, No. 1:20-CV-00172-LLK, 2022 WL 509118, at *2 (W.D. Ky. Feb. 18, 2022). Plaintiff does not allege or show that her migraines would necessitate a disabling frequency of absences from the job and/or the job site. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Comm'r*, 167 F. App'x 496, 507 (6th Cir. 2006).

**The ALJ adequately followed the Appeals Council remand order.**

Plaintiff's fourth argument is that the ALJ did not follow the Appeals Council's remand order. [Doc. 21-3 at PageID.1033-35].

The ALJ's decision in this case followed a remand by the Appeals Council for a new decision. The Appeals Council ordered the ALJ, among other things, to "[i]n accordance with Social Security Acquiescence Ruling … 98-4(6) *(Drummond* v. *Commissioner of Social Security)* … include decisional language explaining which findings from the prior decision remain binding and which do not." [Doc. 50 at 220].

Plaintiff's argument is unpersuasive for three reasons.

First, the argument is not cognizable on judicial review. Although the "Sixth Circuit has not addressed the issue, ... the overwhelming majority of courts in this circuit … have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand." *Hubbard v. Comm'r*, No. CV 18-11758, 2019 WL 4866733, at *3 (E.D. Mich. June 10, 2019) (report adopted) (collecting authorities).

Second, in declining to assume jurisdiction to review the ALJ's latest decision, the Appeals Council implicitly found that the ALJ adequately addressed its initial concerns.

Third, as discussed above in connection with Plaintiff's first argument, the ALJ's decision did comport with *Drummond*.

### Order

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

March 15, 2022

Lanny King, Magistrate Judge
United States District Court